FRANK E. GOODJON, Respondent, *v.* UNITED BOND AND BUILDING CORPORATION, Appellant. (Action No. 1.)

JACOB P. GOETTEL, Respondent, *v.* UNITED BOND AND BUILDING CORPORATION, Appellant.

Fourth Department, May 8, 1929.

*T. W. Egan,* for the appellant.

*John H. McCrahon,* for the respondents.

SEARS, P. J. The plaintiff in each of these cases is the holder of several coupon bonds of the defendant. These bonds were issued on the 15th day of May, 1924, and by their terms become payable on the 15th day of May, 1944, and bear interest at seven per cent. Each bond has semi-annual interest coupons attached.

The defendant failed to pay the interest which fell due on May 15, 1926, and actions were brought to enforce collection of such interest.

The defense set forth in the answer in each case is to the effect that under the terms of the resolution under which the bonds were issued, to which reference is made in the bonds themselves, no action can be maintained by a bondholder, but that relief can only be obtained through the intermedial act of a trustee chosen by the holders of seventy-five per cent of the outstanding bonds. The plaintiff in each case has obtained judgment for the amount of the interest in default, in the first case upon a motion for summary judgment, and in the second after a trial. The sole question involved in each is whether under the terms of the bonds and coupons, taken in connection with the resolution providing for the issuance of the bonds, individual bondholders may maintain actions for the recovery of interest in default. The interest coupons are in the following form:

"On the 15th day of May, 1926, the United Bond & Building Corporation will pay to bearer at the Liberty National Bank of the City of Syracuse and State of New York Three and 50/100 Dollars ($3.50) in gold coin of the United States of America of or equal to the present standard of weight and fineness (without deducting for any United States, State, municipal or other tax or taxes not exceeding two per cent (2%) as described in its Seven Per Cent Coupon Gold Bond) being six months' interest then due on said bond No. C-64."

The bonds contain this clause:

"This bond is one of an authorized issue of bonds not exceeding the aggregate principal amount of One Hundred Thousand Dollars ($100,000) and issued in denominations of One Thousand Dollars ($1000.00) numbering from M1 upwards; Five Hundred Dollars ($500) denomination numbering from D1 upwards and One Hundred Dollars ($100.00) denomination numbering from C1 upwards of United Bond & Building Corporation bearing interest at the rate of seven per cent, all of which are uniform in date, tenor and effect and is issued and accepted by the bearer subject to the terms, conditions, restrictions, rights and privileges set forth at length in the resolution of the Board of Directors of said Corporation authorizing the issuance thereof to which resolution reference is hereby made."

The pertinent parts of the resolution, under which the bonds were issued, relied upon by the defendant are as follows:

"*Further resolved*, that said bonds be issued under and in pursuance to this resolution, to all the provisions of which said bonds

and the rights of the holders thereof are subject as fully as if said provisions were set forth at length in said bond, and to which provisions, by the receipt of said bond, the holders thereof consent as follows:

" 1. The Company will duly and punctually pay or cause to be paid the principal sum of the aforesaid bond and the interest thereon at the time and in the manner therein and herein specified * * *.

" 2. The whole or any part of the said issue of bonds may be redeemed on any interest date at the option of the Company on and after May 15, 1930, upon payment of the unpaid, accrued interest and one hundred and ten (110%) per centum of the principal. * * *

" 3. In case the company makes default in the payment of principal on any one or more of its said bonds, or in the payment of any installment of interest, and such default shall have continued for six months, or if a receiver shall have been appointed for the company, the owners or holders of at least seventy-five per cent (75%) in amount of principal of said bonds then outstanding and unpaid may elect to declare in writing the principal of said bonds then outstanding and unpaid, to be immediately due and payable together with interest thereon, and shall likewise choose and select in writing one of their own number as Trustee, who shall thereupon send by registered mail to the address of the company at Syracuse, N. Y., written notice of the election by seventy-five per cent (75%) of said bond holders to declare the principal of said bonds due and payable, and his election by said bond holders as Trustee, and if default shall continue for thirty days after such written notice has been sent by the Trustee to the company, then the Trustee, acting as such, for and in behalf of the holders of all bonds then outstanding and unpaid, shall declare the principal of all such bonds theretofore issued and then outstanding and unpaid, to be immediately due and payable, and the company hereby agrees that upon said election and notice all of said bonds shall immediately become due and payable without further notice, anything in this resolution or in said bonds to the contrary notwithstanding.

" 4. In case of default and notice thereof and his election as aforesaid, the Trustee so elected may call a meeting of all the owners and holders of bonds then unpaid and outstanding, by publishing * * *.

" 5. No owner or holder of said bonds or coupons herein provided for, shall have the right to institute any suit, action or proceeding at law or in equity upon said bonds or for the enforcement of any of the provisions of this resolution or for the appointment of a receiver or for any other remedy under or upon the bonds referred

to herein, except through the Trustee and in the manner hereinbefore provided, nor unless also such owners of said bonds shall have offered to the Trustee so elected, if demand is made therefor, adequate security and indemnity against costs, expenses or liabilities to be incurred by reason of such action, suit or proceeding, it being understood and intended that no one or more holders of said bonds shall have any right or remedy hereunder in any manner whatsoever to enforce any obligation thereof except on the conditions herein provided for.

" All proceedings hereunder shall be instituted, had and maintained by said trustee for the equal benefit of all bondholders whose bonds are unpaid and outstanding without preference, priority or distinction as to all payments made by the company to the trustee as provided herein and in all collections made by said trustee from the Company whether such payments or collections are made voluntarily or through the enforcement of the covenants of this agreement or any judicial proceeding or otherwise and all such payments made to said trustee shall be deemed to have been made to such bondholders."

Interest coupons attached to a bond remain mere incidents to the bond and have no greater or other force or effect than the stipulations for interest contained in the bond itself. (*Bailey* v. *County of Buchanan,* 115 N. Y. 297.) Both the bonds and the coupons issued by the defendant contain the direct promise of the defendant to pay the interest which is admitted to be in default. The bond specifically refers to the resolution under which the bonds were issued and provides that the bond is issued and accepted subject to the terms, conditions, restrictions, rights and privileges set forth at length in the resolution.

We must then construe the bond with its coupons and the resolution together. (*McClelland* v. *Norfolk Southern R. R. Co.,* 110 N. Y. 469; *Batchelder* v. *Council Grove Water Co.,* 131 id. 42; *Watson* v. *Chicago, R. I. & P. R. R. Co.,* 169 App. Div. 663.)

In the 1st numbered paragraph of the resolution the defendant asserts its promise to pay the principal and interest as specified in the bonds. In the 2d paragraph the method of calling the bonds for payment before maturity is provided. The 3d paragraph is in relation to acceleration of the date of maturity of the principal by act of the bondholders in case of default in the payment of interest. While an acceleration for a default in the payment of an installment of principal is mentioned in the resolution, under the terms of the bonds themselves there could be no default in the payment of principal in part before the final date of maturity of the bonds and consequently the reference to default in the payment

of principal is inapplicable and nugatory. This provision of the resolution was probably copied from some document used for an issue where principal became due in installments. The paragraph provides for an affirmative act by the bondholders. The conditions precedent to the acceleration of the date of maturity are: 1. Default in interest continued for six months or the appointment of a receiver of the company. 2. An election in writing by the owners of seventy-five per cent of principal of the bonds, to the effect that the bonds should be immediately due and payable, and a choice in writing of a bondholder as trustee. 3. A notice by registered mail from the trustee to the company of the election of the bondholders to accelerate the date of maturity and of the election of the trustee. 4. Continued default for thirty days after such notice by the trustee to the company. 5. A declaration by the trustee that the principal of the bonds be immediately due and payable. The 4th paragraph of the resolution provides for a meeting of the bondholders called by the trustee " so elected " and contains a provision that the trustee " shall in the manner requested by the holders of at least seventy-five per cent (75%) in amount of the principal of said bonds issued, outstanding and unpaid proceed at law or in equity, as he may be directed by seventy-five per cent (75%) in amount of said bondholders to enforce each, every and all rights which the bondholders would or might have herein by the provisions of said bond or of this resolution." The 5th paragraph is a broad clause restricting the owners and holders of the bonds to action through the trustee and prohibiting action by the owner or holder of any bond.

It is to be noticed that the restriction upon personal action by a bondholder is coupled with a provision that action may be taken through the trustee, and yet in the previous provisions of the resolution the trustee is only to be chosen when the bondholders elect to accelerate the date of maturity. There is no provision for the choice of a trustee to sue for interest in default without declaring the principal due and there is no consistent provision for the appointment of a trustee to sue for the principal of the bonds upon their maturity. Considering further that the bonds themselves specifically refer to the terms of the resolution only as to the acceleration of the date of maturity and the right of the defendant to call the bonds before maturity, we have reached the conclusion that the restriction in the resolution is to be construed as having reference only to a case where a trustee is provided for, viz., when the maturity date of the principal is to be accelerated because of default in interest. If we are right in this, there is no inconsistency between the bonds themselves and the resolution, and the plaintiff has properly been allowed judgment for interest.

If, however, there is an inconsistency between the bonds, the coupons and the 1st paragraph of the resolution providing for payment enforcible by action on the one hand, and the 5th paragraph of the resolution prohibiting action except upon the election of seventy-five per cent of the bondholders (which would be equivalent to a provision that interest should only be payable if demanded by seventy-five per cent of the bondholders), on the other hand, then the provisions of the bonds and coupons should prevail as these are the provisions contained in the instruments which alone were to meet the eyes of the owners of the obligations. (*Rothschild* v. *Rio Grande Western R. Co.*, 84 Hun, 103; affd., 164 N. Y. 594; *Berman* v. *Consolidated Nevada-Utah Corp.*, 132 Misc. 462.)

For these reasons judgment in each case should be affirmed, with costs.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

In the first case: Judgment and order affirmed, with costs.
In the second case: Judgment affirmed, with costs.